J-S67011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
IRA A. JOHNSON :
:
Appellant : No. 554 EDA 2018

Appeal from the PCRA Order February 20, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0410491-2000

BEFORE: OTT, J., NICHOLS, J., and STRASSBURGER[*], J.

MEMORANDUM BY OTT, J.: **FILED FEBRUARY 21, 2019**

Ira A. Johnson appeals from the order entered in the Philadelphia County

Court of Common Pleas, dated February 20, 2018, dismissing his fourth

petition filed under the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.

§§ 9541-9546.[1] Johnson seeks relief from the judgment of sentence imposed

on July 12, 2001, following his convictions of first-degree murder, robbery,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that, despite requesting and being granted three extensions of time, the Commonwealth filed a tardy brief in this matter in addition to an application for a fourth extension of time to file a brief. In a *per curiam* order entered on August 31, 2018, this Court stated the third extension of time would be the Commonwealth's final extension. Accordingly, since the Commonwealth did not adhere to this ruling, we will deny its application for a fourth extension of time and will not accept its brief for our review.

and possession of an instrument of crime ("PIC").[2] On appeal, Johnson contends the PCRA court erred in dismissing his petition because the court failed to provide an adequate rationale for finding a recanting witness non-credible. Based on the following, we affirm.

The PCRA court set forth the underlying facts as follows:

[Johnson] was convicted in the shooting death of Stepfon Copper, inside the deceased's apartment at 917 North 16th Street, Philadelphia on February 18, 2000.

At trial, Darrell Williams testified that on February 18, 2000, when he was 13 years of age, he, [Johnson,] and the deceased, were sitting inside the deceased's third floor apartment playing music and watching television. [Johnson] was playing with a .25 caliber handgun.

After about one hour, [Johnson] asked the deceased if he had an audiotape of a group called The Lox. The deceased said that it was in his automobile which was parked outside the building. The deceased gave Mr. Williams the keys to his car and asked him to get the tape. Mr. Williams testified that he went downstairs and retrieved the tape from the car. As he was about to reenter the building, he heard what sounded like a gunshot coming from Mr. Copper's apartment. Mr. Williams proceeded into the building and as he approached the stairs to the third floor, he heard a second shot. He left the building and ran to a location across the street. He watched the building for more than five minutes from this vantage point. He saw [Johnson] exit the building with his hands in his pockets and looking left and right. Mr. Williams later gave a statement to police. He gave the tape and the car keys to the police.

Mr. Williams testified that during the time he was playing with the gun, [Johnson] told the deceased, "Stephon, you burnt me for that gun, it's cool though, it's cool." Mr. Williams testified that [Johnson] and the deceased did not argue in his presence.

_____

[2] 18 Pa.C.S. 2502, 3701, and 907, respectively.

Mr. Williams testified that [Johnson] never pointed the gun at the deceased in his presence.

Joyce Robinson testified that she lived in a second floor apartment in the building. On February 18, 2000 at about 7:30 p.m., she heard a thumping noise coming from the hall. She opened her apartment door and saw [Johnson] at the door to the deceased's apartment.

Matrice Copper testified that she was the deceased's sister and shared the apartment with him. On February 18, 2000, at about 6:30 p.m. she was in her automobile when she observed [Johnson], the deceased and Mr. Williams pull up in another automobile. She returned to the building around 9 p.m. where she learned of the shooting. She went to the Homicide Division and returned home at approximately 2:30 the following morning. She discovered that approximately $300 which she had seen the deceased place under the mattress earlier on December 18 was missing.

PCRA Court Opinion, 3/29/2018, at 2-4 (record citations omitted).

Johnson was arrested and charged with numerous offenses related to the shooting. On July 12, 2001, at the conclusion of a bench trial, the trial court found Johnson guilty of first-degree murder, robbery, and PIC. That same day, the court sentenced Johnson to a term of life imprisonment for the murder conviction, a concurrent term of ten to 20 years' incarceration for the robbery conviction, and a concurrent term of two and one-half to five years' imprisonment for the PIC offense. On August 19, 2003, a panel of this Court affirmed his judgment of sentence, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on March 2, 2004. **See**

**Commonwealth v. Johnson**, 833 A.2d 1146 (Pa. Super. 2003) (unpublished memorandum), *appeal denied*, 845 A.2d 817 (Pa. 2004).

Since then, Johnson has filed three petitions under the PCRA.[3] None of these petitions has provided Johnson any relief. Johnson filed the present *pro se* PCRA petition, his fourth, on September 16, 2015, and an amended *pro se* petition addendum on March 25, 2016. In his petition, Johnson alleged an eyewitness, Williams, had recanted on the testimony he provided at Johnson's trial and now avers that he was told by another individual to provide authorities with a recitation of events that implicated Johnson. Johnson asserted he was entitled to a new trial based on this new recantation evidence.[4]

---

[3] *See* PCRA Court Opinion, 3/29/2018, at 2; *see also Commonwealth v. Johnson,* 927 A.2d 652 (Pa. Super. 2006) (unpublished memorandum), *appeal denied*, 929 A.2d 1161 (Pa. 2007); *Commonwealth v. Johnson*, 996 A.2d 546 (Pa. Super. 2010) (unpublished memorandum), *appeal denied*, 9 A.3d 627 (Pa. 2010); *Commonwealth v. Johnson*, 116 A.3d 685 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 125 A.3d 776 (Pa. 2015).

[4] Johnson attached an unsworn affidavit from Williams, dated February 23, 2015. In the affidavit, Williams averred

When [Johnson] was found guilty I felt like I did the right thing [b]ut I was just a young naïve kid who should have known better but was too upset by what had happened to think. I let the adults tell me what to do and tell me to lie. Two things I've regreted [sic] for a very long time but now wish to correct. I did not personally see Ira Johnson with a gun on the night of Stephons [sic] death I never personally heard any mention of Stephon [sic] burning [Johnson] for a gun. I was not sent to the car … to get a tape. I didn't hear any gunshots and I never saw [Johnson] leaving the building. I was told to say these things because it was believed that the police would believe me over the adult who told them to me.

Pro Se PCRA Petition, 9/16/2015, Affidavit at unnumbered 2.

After determining the petition was untimely, the PCRA court notified Johnson of its intent to dismiss the petition without a hearing on October 18, 2016. *See* Pa.R.Crim.P. 907. For reasons unexplained on the docket, the PCRA court decided to continue the matter for the appointment of new counsel, which occurred on February 15, 2017. Counsel filed an amended petition on March 18, 2017. On January 12, 2018, an evidentiary hearing was held.

> At the evidentiary hearing, Darrell Williams testified that he had not seen [Johnson] in the deceased's residence or in the vicinity of the residence at the time of the shooting. He stated that the deceased's cousin, Terence, and Terence's friend, told him (Darrell Williams) to tell police that [Johnson] had been in the area. Mr. Williams testified that he complied with their request because he was 13 years old and was pressured by Terence and his friend.

PCRA Court Opinion, 3/29/2018, at 5 (record citation omitted).

On February 20, 2018, after considering the hearing testimony, the PCRA court dismissed Johnson's petition for lack of merit. This timely appeal followed.[5]

In his sole issue on appeal, Johnson contends:

> The PCRA court erred in dismissing [Johnson]'s PCRA Petition because the PCRA court failed to sufficiently articulate reasons for dismissing [Johnson]'s PCRA [petition] including reasons for concluding that eyewitness, Darryl Williams, was not credible especially because Williams was not a new witness that

---

[5] On February 21, 2018, the PCRA court ordered Johnson to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Johnson filed a concise statement on February 25, 2018. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on March 29, 2018.

suddenly materialized and there were explained inconsistencies at trial and problems with the police investigation which Williams articulated at the evidentiary hearing.

Johnson's Brief at 7. Moreover, he states: "The PCRA court abused its discretion because the court sat as a waiver judge at trial and had a vested interested [sic] in seeing the conviction stand. There was an effective predisposition against the reliability of Mr. Williams." **Id.** at 10.

Our standard of review regarding the dismissal of a PCRA petition is as follows:

> In reviewing the denial of PCRA relief, we examine whether the PCRA court's determinations are supported by the record and are free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

**Commonwealth v. Goodmond**, 190 A.3d 1197, 1200 (Pa. Super. 2018), *quoting* **Commonwealth v. Roney**, 79 A.3d 595, 603 (Pa. 2013).

"Crucial to the determination of any PCRA appeal is the timeliness of the underlying petition. Thus, we must first determine whether the instant PCRA petition was timely filed." **Commonwealth v. Smith**, 35 A.3d 766, 768 (Pa. Super. 2011), *appeal denied*, 53 A.3d 757 (Pa. 2012).

> The PCRA timeliness requirement … is mandatory and jurisdictional in nature. **Commonwealth v. Taylor**, 933 A.2d 1035, 1038 (Pa. Super. 2007), *appeal denied,* 597 Pa. 715, 951 A.2d 1163 (2008) (citing **Commonwealth v. Murray**, 562 Pa. 1, 753 A.2d 201, 203 (2000)). The court cannot ignore a petition's untimeliness and reach the merits of the petition. **Id.**

*Commonwealth v. Taylor*, 67 A.3d 1245, 1248 (Pa. 2013), *cert. denied*, 134 S. Ct. 2695 (U.S. 2014). A PCRA petition must be filed within one year of the date the underlying judgment becomes final. **See** 42 Pa.C.S. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S. § 9545(b)(3). Here, Johnson's judgment of sentence became final on May 31, 2004, 90 days after the Pennsylvania Supreme Court denied his petition for allowance of appeal and the time for filing a petition for writ of *certiorari* before the United States Supreme Court expired. **See** U.S.Sup.Ct. Rule 13. Accordingly the present petition, filed in 2015, is patently untimely.

Nevertheless, an untimely PCRA petition may be considered if one of the following three exceptions applies:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i-iii).  Additionally, all of the time-bar exceptions are subject to a separate deadline.

> The statutory exceptions to the timeliness requirements of the PCRA are also subject to a separate time limitation and must be filed within sixty (60) days of the time the claim could first have been presented.  **See** 42 Pa.C.S. § 9545(b)(2).  The sixty (60) day time limit . . . runs from the date the petitioner first learned of the alleged after discovered facts. A petitioner must explain when he first learned of the facts underlying his PCRA claims and show that he brought his claim within sixty (60) days thereafter.

**Commonwealth v. Williams**, 35 A.3d 44, 53 (Pa. Super. 2011) (some citations omitted), *appeal denied*, 50 A.3d 121 (Pa. 2012).  Our Supreme Court has held that section 9545(b)(2) also requires a showing of due diligence insofar that a petitioner must file the petition within 60 days of when the claim first could have been presented. **Commonwealth v. Marshall**, 947 A.2d 714, 719-720 (Pa. 2008).

Johnson contends he is entitled to review pursuant to the newly discovered fact exception in Section 9545(b)(1)(ii), based upon Williams' recanted testimony.  The newly-discovered fact exception

> has two components, which must be alleged and proved.  Namely, the petitioner must establish that:  1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

*Commonwealth. v. Bennett*, 930 A.2d 1264, 1272 (Pa. 2007) (internal quotation marks and citations omitted; emphasis removed).[6]

As indicated above, Johnson attached an unsworn affidavit from Williams, dated February 23, 2015, to his *pro se* petition. On March 4, 2015, prior PCRA counsel notified Johnson that he received the affidavit from Williams.[7] Johnson then filed the present fourth petition on September 30, 2015, after the Pennsylvania Supreme Court denied his petition for allowance of appeal on August 15, 2015.[8] We recognize that a PCRA petitioner cannot file a new PCRA petition when a prior petition is still under review on appeal. *Commonwealth v. Lark*, 746 A.2d 585, 588 (Pa. 2000) ("[W]hen an appellant's PCRA appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review."). Accordingly, we conclude Johnson did file

---

[6] "Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (internal citations omitted), *appeal denied*, 125 A.3d 1197 (Pa. 2015).

[7] Johnson indicated he received the letter from counsel on March 9, 2015. *See* Pro Se PCRA Petition, 9/16/2015, at 4.

[8] Johnson alleged, "Such facts could not have been discovered through the exercise of due diligence, since the witness identified [Johnson] at the preliminary hearing and trial unequivocally, for[e]closing all possibilities that [Johnson] could have persuaded him to change his statement prior to the close of trial." Pro Se PCRA Petition, 9/16/2015, at 3.

his petition within 60 days of the date the claim first could have been presented. *See* 42 Pa.C.S. § 9545(b)(2); *Lark*, 746 A.2d at 588 ("The subsequent petition must also be filed within sixty days of the date of the order which finally resolves the previous PCRA petition, because this is the first 'date the claim could have been presented.'").

Once jurisdiction is established, a defendant can present a substantive after-discovered-evidence claim that is cognizable pursuant to 42 Pa.C.S. § 9543(a)(2)(vi).

> [T]o prevail on an after-discovered evidence claim for relief under subsection 9543(a)(2)(vi), a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

*Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017).

> Moreover, we note:
>
> [The Pennsylvania] Supreme Court has summarized appellate consideration of a claim involving recanted testimony as follows:
>
>> The well-established rule is that an appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion.... Recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. There is no less reliable form of proof, especially when it involves an admission of perjury.
>
> *Commonwealth v. Mosteller*, 446 Pa. 83, 88-89, 284 A.2d 786, 788 (1971) (quotations and citations omitted). A prerequisite to such relief is that "the evidence upon which the relief is sought must be credible to the trial court." *Commonwealth v. Lee*, 478

Pa. 70, 74, 385 A.2d 1317, 1319 (1978); *see also Commonwealth v. Nelson*, 484 Pa. 11, 14, 398 A.2d 636, 637 (1979) ("It is up to the trial court to judge the credibility of the recantation."); *Commonwealth v. Fernandez*, 232 Pa. Super. 19, 332 A.2d 819, 821 (Pa. Super. 1974) (explaining that "credibility is the key when a new trial is sought on the basis of recanted testimony"). This is so because the PCRA court "had ample opportunity to observe [the victim's] manner and demeanor during a full evidentiary hearing." *Commonwealth v. Gaddy,* 492 Pa. 434, 438, 424 A.2d 1268, 1270 (1981); *see also Commonwealth v. Simpson*, 302 Pa. Super. 287, 448 A.2d 640, 642 (Pa. Super. 1982) (explaining that "the hearing judge was in a much better position than we are to evaluate the demeanor and credibility of the witnesses"); *Commonwealth v. Bernstein*, 309 Pa. Super. 573, 455 A.2d 1232, 1234 (Pa. Super. 1983)(remanding case for trial court's determination of credibility of recantation testimony).

*Commonwealth v. Loner*, 836 A.2d 125, 135 (Pa. Super. 2003), *appeal denied*, 852 A.2d 311 (Pa. 2004).[9]

Here, the PCRA court found the following:

This court heard the testimony and observed the demeanor of Mr. Williams both at the evidentiary hearing and at trial. Mr. Williams waited some 15 years before coming forward with his new story. Mr. Williams reversed his previous testimony and in effect admitted lying before this court at trial and also to the police. Accordingly, this court found that Mr. Williams' testimony lacked credibility.

In order to merit a new trial, new evidence must satisfy two tests. The new evidence must be exculpatory and the court must be satisfied that it would have changed the result at trial. Post Conviction Relief Act, 42 Pa.C.S. Section 9543(a)(2)([vi]). Since the recanted testimony of Darrell Williams lacked credibility, it

---

[9] *See also Commonwealth v. McCracken*, 659 A.2d 541, 545 (Pa. 1998) ("recantation testimony is one of the least reliable forms of [evidence], particularly when it constitutes an admission of perjury"); *Commonwealth v. D'Amato*, 856 A.2d 806, 825 (Pa. 2004) (same).

would not have changed the result at trial. Accordingly, the PCRA Petition was properly dismissed as lacking merit.

PCRA Court Opinion, 3/29/2018, at 6-7.

We agree with the PCRA court's conclusion for several reasons. First, Johnson provides no legal authority to support his claim that the PCRA court failed to sufficiently articulate reasons for dismissing his petition, including reasons for concluding that Williams was not credible. Second, the court sat as the fact-finder at Johnson's 2001 trial, observing Williams testify at that time, in addition to witnessing his manner and demeanor with regard to his recantation testimony at the January 12, 2018, evidentiary hearing. We are mindful that credibility determinations rest within the PCRA court's sound discretion. *See Loner*, *supra*. The court provided a cogent, albeit concise, explanation as to why it did not find Williams' recantation testimony to be credible. We are bound by this determination. *See Goodman*, *supra*. Therefore, we conclude the PCRA court's assessment reveals no abuse of discretion. Accordingly, we affirm the order of the PCRA court denying PCRA relief.

Order affirmed. Commonwealth's application for a fourth extension of time to file briefs denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/19